1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,

12                     Plaintiff,                      No. 2:24-cv-00381-TLN-JDP

13          v.

14    APPROXIMATELY $325,690.00 SEIZED            **ORDER**
      FROM BANK OF AMERICA,

15                     Defendant.

16

17          This matter is before the Court on Claimant JVA Building LLC's ("Claimant") Motion to

18   Dismiss (ECF No. 12) and the Government's Motion to Strike (ECF No. 20.)  The Government's

19   Motion to Strike is fully briefed, and the Government submitted three responses to Claimant's

20   Motion to Dismiss.[1]  (ECF Nos. 21, 22, 24, 25, 26.)  For the reasons set forth below, the

21   Government's Motion to Strike is DENIED and Claimant's Motion to Dismiss is DENIED.

22   ///

23   ///

24   ///

25   ///

26   ///

27   _____

28   [1]      Claimant did not object to the Government's filing of three responses.  Accordingly, the
     Court will, in its own discretion, consider the arguments raised in each response.

                                                1

1        **I.    FACTUAL AND PROCEDURAL BACKGROUND**[2]

2              The instant action is an *in rem* civil action filed by the Government, seeking to forfeit to

3    the United States approximately $325,690.00 seized from Bank of America account number

4    898144223269 involved in alleged violations of wire fraud.  (*See* ECF No. 1.)  On August 25,

5    2023, an individual known as C.H. and her son visited the Sacramento FBI office to report C.H.

6    had been defrauded out of $1,057,653.16 by an individual imitating her real estate agent, S.S.  (*Id.*

7    at 2.)  C.H. was in the process of buying a new home in San Diego, California, and Pacific

8    Marine Escrow was handling all aspects of the sale.  (*Id.*)  On August 21, 2023, C.H. received an

9    email from S.S., stating the escrow wiring instructions to complete the purchase had changed due

10   to their bank account undergoing an audit.  (*Id.*)  The email included an attachment that indicated

11   the funds to purchase the home should now be sent to Evolve Bank & Trust, account name Cf

12   Napa, LLC.  (*Id.*)  The attachment contained Pacific Marine Escrow's emblem and D.B.A. CF

13   NAPA, LLC (in a different font from the emblem) listed beside it.  (*Id.*)  C.H. had already gone in

14   person to Charles Schwab to fill out the wire information to send money to City National Bank,

15   account name Pacific Marine Escrow, Inc.  (*Id.*)  Upon receiving the new, fraudulent information,

16   C.H. went back to Charles Schwab and revised the wiring instructions to reflect payment to CF

17   Napa, LLC.  (*Id.*)

18             On August 22, 2023, C.H. sent a wire in the amount of $1,057,653.16 to CF Napa LLC, at

19   Evolve Bank & Trust.  (*Id.*)  On August 23, 2023, C.H. received another email from S.S. that

20   included a forwarded email from J.K., an escrow assistant at Pacific Marine Escrow, stating that

21   the buyer's funds were pending on their end and should be deposited in full by the next morning.

22   (*Id.*)  The email from J.K. to S.S., then forwarded to C.H., was allegedly fraudulent and intended

23   to continue the ruse and delay law enforcement.  (*Id.*)

24             J.K. told the FBI she began to get worried on August 24, 2023, when C.H.'s funds had not

25   yet arrived in escrow.  (*Id.* at 2–3.)  J.K. facilitated a phone call between C.H. and B.H., a

26   financial consultant at Charles Schwab, and read them the wiring instructions used to close the

27

28   [2]       The instant factual background is taken largely verbatim from the Government's
     Complaint.  (ECF No. 1.)

                                                     2

1    transaction.  (*Id.* at 3.)  The review of the wiring instructions among the group exposed the two

2    different wiring instructions and, ultimately, the fraud committed against C.H.  (*Id.*)  C.H. then

3    contacted S.S., who said she had not sent the August 21 and August 23 emails and told C.H. she

4    believed her email address had been compromised (and going forward, she was going to use a

5    different email address that identified her real estate brokerage company).  (*Id.*)

6        After C.H. and her son filed a walk-in complaint with the Sacramento FBI office on

7    August 25, 2023, the FBI proceeded to coordinate with the banking institution that received the

8    wired funds — Evolve Bank & Trust.  (*Id.*)  According to Evolve Bank & Trust, after they

9    received the approximately $1 million wire transfer, the account holder immediately moved

10   $440,000 to a JP Morgan Chase account held by Puentex Strategy Solutions LLC ("Puentex").

11   (*Id.*)  Evolve Bank & Trust quickly learned of the fraudulent activity and froze and returned the

12   remaining funds ($617,595) to C.H. without further dissipation.  (*Id.*)  Prior to the deposit of over

13   $1 million into the Evolve Bank & Trust account, the account had a zero balance.  (*Id.*)

14       The FBI contacted JP Morgan Chase, who confirmed a $440,000 wire sent from Evolve

15   Bank & Trust to Puentex.  (*Id.*)  Once at JP Morgan Chase, the funds were immediately depleted

16   with two domestic wires to Bank of America account ending in -3269 ($280,000 and $67,375)

17   and eight wires to international banks based in Hong Kong, Taiwan, and Shanghai on August 24,

18   2023.  (*Id.*)  Bank of America confirmed two wires had been received into the account ending in -

19   3269 from Puentex (in amounts of $280,000 and $67,375).  (*Id.*)  Prior to the deposit of these two

20   wires, the account held approximately $30,500.  (*Id.*)  On September 28, 2023, the FBI obtained a

21   federal seizure warrant for Bank of America account ending in -3269.  (*Id.* at 4.)  Law

22   enforcement executed the seizure warrant, seizing the remaining balance of approximately

23   $325,690.000—the defendant funds.  (*Id.*)

24       On January 31, 2024, the Government filed the instant verified Complaint for forfeiture *in

25   rem*.  (*See id.*)  The Government sets forth a single claim under 18 U.S.C. § 981(a)(1)(C), alleging

26   the defendant funds were derived from proceeds traceable to an offense constituting a "specified

27   unlawful activity" as defined in 18 U.S.C. § 1956(c)(7) and are therefore subject to forfeiture

28   pursuant to 18 U.S.C. § 981(a)(1)(C).  (*Id.* at 4.)  On July 1, 2024, Claimant filed the instant

1  motion to dismiss the Complaint.  (ECF No. 12.)  On August 14, 2024, the Government filed the

2  instant motion to strike Claimant's claim.  (ECF No. 20.)  The Court will address each of the

3  following motions in turn.

      **II.**       **THE GOVERNMENT'S MOTION TO STRIKE**

              **A.**     <u>Standard of Law</u>

6        A claimant must establish both statutory and Article III standing to contest a forfeiture.

7  *United States v. $295,726.42 in Account Funds Seized*, 279 F. Supp. 3d 1050, 1053 (C.D. Cal.

8  2018); *see also United States v. Real Property Located at 17 Coon Creek Rd., Hawkins Bar*

9  *California, Trinity Cty.* (*17 Coon Creek Rd.*), 787 F.3d 968, 973–74 (9th Cir. 2015) (noting

10  statutory standing is established through compliance with Supplemental Rule G).  The threshold

11  function of the burden to establish Article III standing is to ensure the Government "is put to its

12  proof only where someone acting with a legitimate interest contests the forfeiture" and therefore a

13  claimant must "demonstrate that he has a sufficient interest in the property to create a case or

14  controversy."  *United States v. $41,475.00 in U.S. Currency*, No. CV 15-006960-R(SHSX), 2016

15  WL 337380, at *1 (C.D. Cal. Jan. 6, 2016); *United States v. Real Property Located at 5208 Los*

16  *Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004).

17        Supplemental Rule G governs forfeiture actions *in rem* arising from a federal statute.  Fed.

18  R. Civ. P. Supp. R. G.  Under this rule, the Government may move to strike a claim at any time

19  before trial for: (1) failure to comply with Rule G(5) or (6); or (2) because the claimant lacks

20  standing.  Fed. R. Civ. P. Supp. G(8)(c)(i).  Rule G(5) provides a claimant must serve and file an

21  answer to the complaint or a motion under Rule 12 within 21 days after filing the claim.  Fed. R.

22  Civ. P. Supp. G(5)(b).  Further, Rule G(6) provides the Government may "serve special

23  interrogatories limited to the claimant's ability and relationship to the defendant property without

24  the court's leave at any time after the claim is filed and discovery is closed."  Fed. R. Civ. P.

25  Supp. G(6)(a); *see $295,726.42 in Account Funds Seized*, 279 F. Supp. 3d at 1053 (noting that,

26  "[t]o collect evidence on the issue of standing, Rule G(6) broadly allows the government to

27  collect information" through special interrogatories (quoting *United States v. $133,420.00 in U.S.*

28  *Currency*, 672 F.3d 629, 642 (9th Cir. 2012))).  Answers or objections to the interrogatories

1    "must be served within 21 days after the interrogatories are served."  Fed. R. Civ. P. Supp.

2    G(6)(b).

3         However, the advisory committee notes state that "[n]ot every failure to respond to

4    [special] interrogatories warrants an order striking the claim."  Advisory Comm. Note to Fed. R.

5    Civ. P. Supp. R. G(6).  In reliance on this language, courts "have declined to strike forfeiture

6    claims and answers despite insufficient or easily cured yet defective responses to special

7    interrogatories or where the claimant is litigating pro se."  *United States v. $209,815 in United*

8    *States Currency*, No. C 14-0780 SC, 2015 WL 1927431, at *3 (N.D. Cal. Apr. 28, 2015).

9    However, "other courts have granted motions to strike where claimants have failed to respond to

10   special interrogatories after multiple extensions, . . . to respond in a timely manner or request an

11   extension, . . . or to respond after seemingly abandoning the case."  *$209,815 in United States*

12   *Currency*, 2015 WL 1927431, at *3 (internal citations omitted).

13        The advisory committee notes also provide that "the sufficiency of a claimant's responses

14   to special interrogatories under Rule G(6) should be evaluated using a 'more demanding' standard

15   than that employed to determine eligibility for discovery sanctions under Rule 37[.]"  *United*

16   *States v. $333,806.93 in Proceeds*, No. CV 05-2556 DOC ANX, 2010 WL 3733932, at *1 (C.D.

17   Cal. Aug. 30, 2010) (citing Adv. Comm. Note to Fed. R. Civ. P. Supp. R. G(8)(c)(i)(A)).  Rule 37

18   states that "evasive or incomplete disclosure, answer, or response must be treated as a failure to

19   disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).

20             B.    Analysis

21        The Government argues Claimant's claim must be stricken because: (1) Claimant failed to

22   respond to the Government's Supplemental Rule G(6) special interrogatories; (2) Claimant lacks

23   statutory standing because it failed to file an answer as required by Supplemental Rule G(5)(b);

24   and (3) the claim fails to identify Claimant's interest as required by Supplemental Rule

25   G(5)(a)(i)(B).  (ECF No. 20-1 at 7–11.)  The Court will address each of the Government's

26   arguments in turn.

27   ///

28   ///

5

1              *i.*        *Whether Claimant Failed to Respond to the Special Interrogatories*

2          The Government argues, as of the filing date of its motion, Claimant had not answered the

3    Supplemental Rule G special interrogatories (which were served on July 15, 2024) and the

4    twenty-one days in which to respond had lapsed (as of August 5, 2024).  (*Id.* at 7.)  The

5    Government asserts the claim does not provide any details which prevents it from making any

6    connection between the seized funds and Claimant.  (*Id.* at 7–8.)  The Government maintains

7    "[f]ederal courts across the Unites States routinely strike claims based on a failure to timely

8    respond to special interrogatories on standing, including when identifying the financial details and

9    involved transactors."  (*Id.* at 8.)

10          In opposition, Claimant contends it timely responded to the interrogatories by serving

11    responses within 30 days of receipt, "as previously discussed and agreed between counsel."  (ECF

12    No. 24 at 4.)  Claimant asserts that even if it had served the responses late, a delay of nine days

13    does not warrant striking the claim.  (*Id.* (citing *17 Coon Creek Rd.*, 787 F.3d at 973).)

14          In reply, the Government argues the agreement to extend deadlines on the interrogatories

15    is false, as Claimant only "had a proposal to extend the discovery deadline if the agreement

16    covered the statute's timing cadence when a party files a motion to dismiss *before* responding to

17    the interrogatories," but Claimant failed to respond to the Government's emails to formalize the

18    extension.  (ECF No. 25 at 1–2.)  The Government notes Claimant "confesses to the tardiness,"

19    and "case law teaches that repeated and continued statutory failures have consequences[.]"  (*Id.* at

20    2.)

21          Here, the Court disagrees with the Government that "strict compliance is required" with

22    Rule G(6).  (ECF No. 20-1 at 8.)  In its reply, the Government concedes that Claimant has indeed

23    responded.  (ECF No. 25 at 1–2.)  The Court is persuaded by Claimant's citation to *17 Coon*

24    *Creek Rd.*, in which the Ninth Circuit held that "where a claimant's Article III and statutory

25    standing are not reasonably in dispute, his failure to respond to Rule G(6) special interrogatories

26    does not, in itself, warrant striking his claim."  787 F.3d at 977.  The Government does not

27

28

1   challenge Claimant's Article III standing, Claimant's statutory standing is not in dispute,[3] and

2   Claimant has not failed to respond entirely to the special interrogatories.  Although untimely, the

3   Court finds a delay of nine days does not warrant striking the claim.  *Cf. United States v.*

4   *Approximately $67,900.00 in U.S. Currency*, No. 2:13-cv-01173-JAM-AC, 2013 WL 6440211, at

5   *2 (E.D. Cal. Dec. 9, 2013) (finding claimant failed to timely respond to special interrogatories

6   where claimant served his responses two months after the special interrogatories were served

7   without requesting an extension and his responses were not signed under oath).  Further, to the

8   extent the Government argues Claimant's response are defective, the Court would be inclined to

9   grant Claimant at least one opportunity to cure before striking the claim.  *17 Coon Creek Rd.*, 787

10  F.3d at 973 ("[C]ourts typically afford claimants one or even several opportunities to cure

11  defective Rule G(6) responses, except where the circumstances indicate that it would be futile to

12  do so or reflect persistent discovery abuses.").  Accordingly, the Court DENIES the

13  Government's motion to strike based on Claimant's failure to timely respond to special

14  interrogatories.

15              *ii.   Whether Claimant Failed to File An Answer Under Rule G(5)(b)*

16          The Government argues Claimant's claim should be dismissed because Supplemental

17  Rule G(5)(b) requires a claimant to file an answer within twenty-one days after filing a claim and

18  Claimant failed to file an answer by its deadline of July 1, 2024.  (ECF No. 20-1 at 8–9.)  The

19  Government notes that because Claimant has not filed an answer, it lacks knowledge of which

20  part of the Complaint Claimant intends to contest or whether it intends to plead any affirmative

21  ─────────────
    [3]     As previously mentioned, Rule G(8) provides the Government may move to strike a claim
22  or answer "(A) for failure to comply with Rule G(5) or (6), or (B) because the claimant lacks
    standing."  Fed. R. Civ. P. Supp. R. G(8).  Although the Government argues Claimant lacks
23  "statutory standing" in moving to strike based on a failure to the comply with Rule G(5), the
    Ninth Circuit noted that "[c]onstruing a claimant's failure to comply with Rule G(5) or G(6) to
24  require automatic dismissal, as if it were a statutory standing defect, would appear to render
    subpart (b) of Rule G(8)(c)(i) redundant, violating a fundamental canon of construction."  *17*
25  *Coon Creek Rd.*, 787 F.3d at 976.  The court explained the structure of Rule G(8) "counsels
    against the interpretation that a claimant's failure to abide by Rule G(6) necessarily constitutes a
26  standing defect."  *Id.*  Based on similar logic, the Court declines to construe Claimant's failure to
    comply with Rule G(5) as a statutory standing defect.  Further, as the Court will establish later in
27  this Order, the claim adequately alleges sufficient facts to comply with the requirements of Rule
    G(5)(a)(i)(B).  Therefore, Claimant's statutory standing is not in dispute.
28

1  defenses. (*Id.* at 9.) In opposition, Claimant asserts it filed its motion to dismiss on July 1, 2024,

2  a deadline agreed between counsel. (ECF No. 24 at 4.) In reply, the Government maintains

3  Claimant only requested an extension to file its answer, not a motion to dismiss. (ECF No. 25 at

4  2.) The Government notes Claimant has still not filed an answer. (*Id.*)

5        As stated previously, Rule G(5) provides that "[a] claimant must serve and file an answer

6  to the complaint or a motion under Rule 12 within 21 days after filing the claim." Fed. R. Civ. P.

7  Supp. R. G(5)(b).

8        Here, Claimant filed its claim on May 28, 2024. (ECF No. 10.) Pursuant to Rule G(5), its

9  answer or a Rule 12 motion was accordingly due 21 days after May 28, 2024, which was June 17,

10  2024. The parties acknowledged this was the deadline in an email exchange. (ECF No. 20-3 at

11  3.) In this exchange, Claimant's counsel noted the "answer is due on Monday" and requested an

12  extension, to which the U.S. attorney responded, "Let's extend the answer filing deadline two

13  weeks. 14 days from Monday." (*Id.*) The Government therefore disputes the agreed-upon

14  extension allowed for Claimant to file a Rule 12 motion to dismiss because only the word

15  "answer" is included in the email exchange. However, because Claimant submitted its Rule 12

16  motion by the agreed-upon extension (which was initially allowed by Rule G(5)), the Court will

17  use its inherent authority to manage its own docket to construe the filing as proper and timely.

18  *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to

19  manage their dockets and courtrooms with a view toward the efficient and expedient resolution of

20  cases."). Accordingly, the Court DENIES the Government's motion to strike based on

21  Claimant's failure to file an answer as required by Rule G(5).

22        *iii.   Whether the Claim Complies with Rule G(5)(a)(i)(B)*

23        The Government argues the claim fails to identify Claimant's interest, its connection with

24  the defendant funds, or the "how," "where," and "whom" required by Supplemental Rule

25  G(5)(a)(i)(B). (ECF No. 20-1 at 10.) The Government asserts the claim states Claimant's sole

26  owner, Nicolas Paganini, "obtained the funds from his investments and accounts in Argentina,"

27  but "it is undeniable that *these funds*, the $325,690.00 seized by the FBI, did not originate from

28  Paganini or Argentina." (*Id.* (emphasis in original).) The Government maintains even simple

1   physical possession is insufficient to establish standing and a claimant must allege facts

2   "regarding how the claimant came to possess the property, the nature of the claimant's

3   relationship to the property, and/or the story behind the claimant's control of the property."  (*Id.*

4   at 11 (quoting *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 498 (6th Cir.

5   1998)).)

6            In opposition, Claimant maintains it properly identified its interest by explaining its

7   member paid $350,000 in Argentina to an affiliate of Puentex to receive $345,625 in the United

8   States and therefore the claim correctly identifies Claimant's relationship to the funds.  (ECF No.

9   24 at 5.)  Claimant notes the Ninth Circuit only requires a claimant to assert a claim to be proven

10  later and not at this juncture.  (*Id.*)  Claimant further maintains that it has described the "how,"

11  "where," and "whom," with documentary evidence of the origin of Claimant's funds.  (*Id.* (citing

12  ECF No. 10 at 5; ECF No. 10-1).)  Finally, Claimant contends the Government has already had

13  the chance to discover the missing details through the special interrogatories it has served (and

14  eventually through standard discovery).  (*Id.* at 6.)

15           In reply, the Government argues forfeiture case law "does not say a claim meets the

16  pleading standard when it alleges some facts but omits the most foundational of details forming

17  the basis for its interest," and such a claim is stricken as deficiently pleaded.  (ECF No. 25 at 3.)

18  The Government further argues Claimant concedes the claim may omit some details, but

19  discovery rules do not exist to enforce pleading standards, which are clear basic hurdles and

20  separate from discovery.  (*Id.*)

21           Rule G(5) requires that "[a] person who asserts an interest in the defendant property may

22  contest the forfeiture by filing a claim in the court where the action is pending" and the claim

23  must "identify the claimant and state the claimant's interest in the property."  Fed. R. Civ. P.

24  Supp. R. G(5)(a)(i)(B).  Courts have held that claimants in civil forfeiture actions can satisfy

25  standing where they can establish they have a "colorable interest in the property, . . . which

26  includes an ownership or a possessory interest."  *$133,430.00 in U.S. Currency*, 673 F.3d at 637;

27  *$295,726.42 in Account Funds Seized*, 279 F. Supp. 3d at 1053; *17 Coon Creek Rd.*, 787 F.3d at

28  977 (noting that "an unequivocal assertion of ownership is sufficient, at the motion to dismiss

1  stage, to establish statutory standing").

2         Here, the Court finds the claim adequately alleges sufficient facts to comply with the

3  requirements of Rule G(5)(a)(i)(B).  Claimant alleges its "sole member obtained the funds from

4  his investments and account in Argentina," and attaches what appears to be a sworn translation of

5  an income certification document.  (ECF No. 10 at 5; ECF No. 10-1.)  Claimant further alleges it

6  "paid USD $350,000 to an affiliate" of Puentex in Argentina, and "Puentex, through affiliated

7  entities in Argentina, provided financial facilitation to Argentine entities and individuals in their

8  businesses in the United States."  (ECF No. 10 at 5.)  Claimant then alleges a Puentex affiliate

9  received from Paganini "$350,000 U.S. dollars in Argentina under a loan agreement that required

10 payment in the United States" and, pursuant to that agreement, Puentex wired $280,000.00 and

11 $67,375.00 to Claimant (Paganini's company).  (*Id.*)  Claimant alleges that from this transaction,

12 Puentex made a profit of 1.25 percent that was deducted from the wired funds.  (*Id.*)  Even if the

13 Court applied the out-of-circuit test the Government cites (*see* ECF No. 20-11 at 11), the

14 foregoing allegations adequately establish "how the claimant came to possess the property, the

15 nature of the claimant's relationship to the property, and/or the story behind the claimant's control

16 of the property."  *$515,060.42 in U.S. Currency*, 152 F.3d at 498.  The Court therefore finds

17 Claimant adequately alleges "how," "where," and "whom" in compliance with Rule

18 G(5)(a)(i)(B).  Accordingly, the Court DENIES the Government's motion to strike based on

19 Claimant's failure comply with Rule G(5)(a)(i)(B).

20        In sum, the Government fails to establish sufficient grounds upon which to strike

21 Claimant's claim.  The Court therefore DENIES the Government's motion to strike.

22     **III.    CLAIMANT'S MOTION TO DISMISS**

23        Claimant moves to dismiss the Complaint for failure to state a claim with particularity.

24 (ECF No. 12-1 at 6–8.)  Claimant further moves to dismiss the Complaint based on improper

25 venue, or, in the alternative, to transfer this action to the Middle District of Florida.  (*Id.* at 8–9.)

26 The Court will consider each argument in turn.

27 ///

28 ///

10

1    A.    Failure to State a Claim

2            i.    *Standard of Law*

3        Federal Rule of Civil Procedure ("Rule") 12(b) and Supplemental Rule G govern motions

4    to dismiss *in rem* forfeiture actions.  *United States v. Real Property Located at 6415 N. Harrison*

5    *Ave., Fresno, Cal.*, No. 1:11-cv-00304-OWW-SKO, 2011 WL 2580335, at *1 (E.D. Cal. June 28,

6    2011).  A motion to dismiss for failure to state a claim upon which relief can be granted under

7    Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th

8    Cir. 2001).  *In rem* forfeiture complaints must meet the plausibility standard articulated in

9    *Twombly*/*Iqbal*: "To survive a motion to dismiss, a complaint must contain sufficient factual

10   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

11   556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561–63

12   (2007)).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and

13   the grounds showing entitlement to relief."  *Twombly*, 550 U.S. at 570.  A pleading is insufficient

14   if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of

15   action."  *Id.* at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a

16   cause of action, supported by mere conclusory statements, do not suffice.").

17       Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

18   facts to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 697 (quoting

19   *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

20   content that allows the court to draw the reasonable inference that the defendant is liable for the

21   misconduct alleged."  *Id.* at 680.  While the plausibility requirement is not akin to a probability

22   requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."

23   *Id.* at 678.  This plausibility inquiry is "a context-specific task that requires the reviewing court to

24   draw on its judicial experience and common sense."  *Id.* at 679.

25       Under Supplemental Rule G, a forfeiture complaint must:

26       (a)  be verified;

27       (b)  state the grounds for subject-matter jurisdiction, in rem
              jurisdiction over the defendant property, and venue;

28

11

(c)  describe the property with reasonable particularity;

(d)  if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;

(e)  identify the statute under which the forfeiture action is brought; and

(f)  state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Fed. R. Civ. P. Supp. R. G(2); *see also United States v. One White Crystal Covered Bad Tour Glove and Other Michael Jackson Memorabilia*, No. CV 11-3582-GW SSX, 2012 WL 8455336, at *1 (C.D. Cal. Apr. 12, 2012) (noting "[a] complaint for forfeiture *in rem* is subject to a heightened pleading standard").  Supplemental Rule E requires the complaint to "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."  Fed. R. Civ. P. Supp. R. E(2)(a).  The Ninth Circuit has concluded that even though the pleading standard under Rule E(2)(a) is a higher standard than notice pleading, it is still a "low bar" that requires a complaint to "state the circumstances giving rise to the forfeiture claim with sufficient particularity that the claimant can commence a meaningful investigation of the facts and draft a responsive pleading and permit a reasonable belief for pleading purposes that the property in question is subject to forfeiture."  *United States v. Aguilar*, 782 F.3d 1101, 1108–09 (9th Cir. 2015) (cleaned up).

*ii.    Analysis*

Claimant argues the Complaint fails to state a claim with particularity because it states in a conclusory fashion that Claimant's funds are traceable to the fraud but it is silent and hides facts related to the "other funds" in the intermediary's account.  (ECF No. 12-1 at 6.)  Claimant asserts the Complaint does not provide any particular facts to plausibly allege Claimant's funds originated in the fraud, compared to any other of the undisclosed transactions from Puentex's account.  (*Id.* at 7.)  Claimant contends it has not been notified through the Complaint about the facts the Government would have alleged when applying for a seizure warrant or even to trace Claimant's funds to the crime.  (*Id.* at 7–8.)

1    In response, the Government argues "germ-level detail in the initial pleading" is not the

2    standard and the Complaint's allegations are sufficient to give Claimant notice of the facts that

3    form the basis for the forfeiture.  (ECF No. 26 at 4–5.)  The Government contends Claimant's

4    assertion that a fraudster may have utilized an account with some other funds in it for their fraud

5    scheme is "plainly specious" because the Complaint alleges the FBI's tracing and account

6    balances when the stolen funds arrived in the various accounts.  (*Id.* at 5.)  The Government

7    asserts neither the Federal Rules nor the Rules applicable to forfeiture actions "require the

8    [G]overnment prove its case at the pleading stage[.]"  (*Id.* (citation omitted).)  The Government

9    finally notes the motion's use of "other funds" is nonsensical because the bank records have been

10   attached to FBI Agent Austin Harper's declaration and the Complaint alleges "that all the

11   accounts used to defraud and hold the victim's money were connected to the wire fraud and used

12   to further, execute and disguise the illegal scheme."  (*Id.* at 6; *see also* ECF No. 22 at 3–4.)

13   Here, the Court finds the Government's Complaint meets the pleading requirements set

14   forth in Rule G, as articulated above.  First, the Complaint has been verified by FBI Special

15   Agent Austin Harper.  (ECF No. 1 at 5.)  Second, the Complaint sets forth the grounds for subject

16   matter jurisdiction, *in rem* jurisdiction, and venue.  (*Id.* at 1–2.)  Third, the Complaint describes

17   the defendant property with reasonable particularity, noting:

18   > The FBI contacted JP Morgan Chase who confirmed a $440,000 wire
   > sent from Evolve Bank & Trust to Puentex Strategy Solutions.  Once
19   > at JP Morgan Chase, the funds were immediately depleted from the
   > account with *two domestic wires to Bank of America account *3269
20   > ($280,000 and $67,375)* and eight wires to international banks based
   > in Hong Kong, Taiwan, and Shanghai on August 24, 2023.  A JP
21   > Morgan Chase representative reviewing the account activity
   > described the movement as "weird" because as soon as the funds hit
22   > the account, funds were immediately pushed to international banks.
   > The bank account owned by Puentex Strategy Solutions did have
23   > other funds in the account other than the fraudulent funds received
   > from Evolve Bank and Trust . . . *Bank of America confirmed that two
24   > wires had been received into account number *3269 from Puentex
   > Strategy Solutions, LLC, in the amounts of $280,000 and $67,375,
25   > totaling $347,375.00.*  Prior to the deposit of the two wires into the
   > Bank of America account, the account only held approximately
26   > $30,500.

27   (*Id.* at 3 (emphasis added).)  Fourth, the Complaint provides the seizure location — "the

28   defendant funds were seized in this district."  (*Id.* at 2.)  Fifth, the Complaint identifies that this

1   action is brought under 18 U.S.C. § 981(a)(1)(C).  (*Id.* at 4.)  Sixth, the Complaint states with

2   sufficient detail facts to support the seizure of the defendant funds.  In conjunction with the

3   foregoing allegations, the Complaint alleges that when Evolve Bank & Trust (which received the

4   over $1 million wire transfer) learned of the fraudulent activity, it "froze and returned the

5   remaining funds in the account to C.H."  (*Id.* at 3.) The Complaint further alleges the Evolve

6   Bank & Trust account had a zero balance prior to the transfer.  (*Id.*)  Because all the requirements

7   of Rule G are met, the Complaint is sufficiently pleaded.

8        Even if the Complaint is silent on the "other funds" wired through Puentex's bank account

9   as Claimant contends (ECF No. 12-1 at 6–7), that does not render the Complaint deficient.  *See*

10  *Aguilar*, 782 F.3d at 1109 ("Even if . . . the government may not be able to show *all* of the

11  claimed funds are tainted . . . this does not render the complaint deficient.  We have consistently

12  instructed district courts to wait until trial to adjudicate arguments that a portion of the property

13  the government claims is not subject to forfeiture.").

14       Accordingly, the Court DENIES Claimant's motion to dismiss for failure to state a claim.

15            B.    Improper Venue

16                 i.    *Standard of Law*

17       A Rule 12(b)(3) motion challenges whether the complaint alleges sufficient facts to

18  establish venue is proper.  Fed. R. Civ. P. 12(b)(3).  The plaintiff bears the burden to establish

19  venue is proper.  *United States v. 17 Bank Accounts Containing Various Amounts of U.S.*

20  *Currency*, No. 18-CV-189-ABJ, 2019 WL 13225956, at *7 (D. Wyo. Apr. 9, 2019); *United States*

21  *v. Bank of Am. Account #XXXXXXXX4939*, No. 5:14-CV-723 ATB, 2015 WL 224774, at *1

22  (N.D.N.Y. Jan. 15, 2015).  Federal law provides that a forfeiture action may be brought in: (A)

23  "the district court for the district in which any of the acts or omissions giving rise to the forfeiture

24  occurred"; or (B) "any other district where venue for the forfeiture action or proceeding is

25  specifically provided for in [§] 1395 of this title or any other statute."  28 U.S.C. § 1355(b)(1).

26  Section 1395 states the following:

27            (a) A civil proceeding for the recovery of a pecuniary fine, penalty
               or forfeiture may be prosecuted in the district where it accrues or the
28            defendant is found.

1

2
(b) A civil proceeding for the forfeiture of property may be prosecuted in any district where such property is found.

3
(c) A civil proceeding for the forfeiture of property seized outside any judicial district may be prosecuted in any district into which the property is brought.

4

5
28 U.S.C. § 1395.

6
Where a court finds venue is improper, the court "shall dismiss, or if it be in there interest

7
of justice, transfer such case to any district or division in which it could have been brought."  28

8
U.S.C. § 1406(a).  Dismissal for improper venue is without prejudice.  *In re Hall, Bayoutree*

9
*Assocs., Ltd.*, 939 F.2d 802, 804 (9th Cir. 1991).

10
*ii.     Analysis*

11
Claimant argues because the statute specifically sets venue where the property was seized,

12
this case should proceed in the Middle District of Florida.  (ECF No. 12-1 at 8.)  In response, the

13
Government notes that the Ninth Circuit has held venue is appropriate in "the district court for the

14
district in which any of the acts or omissions giving rise to the forfeiture occurred."  (ECF No. 22

15
at 2 (quoting *United States v. Obaid*, 971 F.3d 1095, 1105 (9th Cir. 2020)); ECF No. 26 at 2

16
(same).)

17
Here, the Court agrees with the Government that 28 U.S.C. § 1355 explicitly states "[a]

18
forfeiture action or proceeding may be brought in — (A) the district court for the district in which

19
any of the acts or omissions giving rise to the forfeiture occurred[.]"  The Complaint alleges

20
venue is proper in this district under 28 U.S.C. § 1355 and 28 U.S.C. § 1395(a) "because the

21
defendant funds were seized in this district."  (ECF No. 1 at 2.)  Further, the Complaint alleges

22
C.H., who was defrauded out of $1,057,653.16 by someone imitating her real estate agent, visited

23
the Sacramento FBI office to report the crime.  (*Id.*)  Accordingly, the Court DENIES Claimant's

24
motion to dismiss for improper venue.

25
C.     Motion to Transfer Venue

26
*i.     Standard of Law*

27
"For the convenience of parties and witnesses, in the interest of justice, a district court

28
may transfer any civil action to any other district or division where it might have been brought or

15

1    to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  The purpose

2    of 28 U.S.C. § 1404(a) ("§ 1404(a)") "is to prevent the waste 'of time, energy and money' and 'to

3    protect litigants, witnesses, and the public against unnecessary inconvenience and

4    expense[.]'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v.

5    Barge FBL-585*, 364 U.S. 19, 26–27 (1960)).  In considering a transfer pursuant to § 1404(a), the

6    district court undertakes an "individualized, case-by-case consideration of convenience and

7    fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal citation

8    omitted).

9        In a § 1404(a) analysis, the Court first determines whether the case could have been

10    brought in the transferee forum and then considers the convenience of the parties and witnesses

11    and the interest of justice.  28 U.S.C. § 1404(a).  Courts look to several factors to determine

12    where the interests of justice and convenience lie, including "(1) plaintiff's choice of forum, (2)

13    convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence,

14    (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other

15    claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of

16    trial in each forum." *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal.

17    2011) (citing *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009));

18    *see also Jones*, 211 F.3d at 498–99.  "No single factor is dispositive, and a district court has broad

19    discretion to adjudicate motions for transfer on a case-by-case basis." *Ctr. for Biological

20    Diversity v. Kempthorne*, No. C 08-1339 CW, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008)

21    (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Sparling v. Hoffman Constr.

22    Co., Inc.*, 864 F.2d 635, 639 (9th Cir. 1988)).

23        "The defendant must make a strong showing of inconvenience before the plaintiff's

24    choice is upset." *United States v. One Oil Painting Entitled Femme en Blanc by Pablo Picasso*,

25    362 F. Supp. 2d 1175, 1185 (C.D. Cal. 2005) (citing *Gherebi v. Bush*, 352 F.3d 1278, 1302 (9th

26    Cir. 2003), *vacated on other grounds*, 542 U.S. 952 (2004)).  "Accordingly, 'transfer should not

27    be granted if the effect is simply to shift the inconvenience to the party resisting the transfer.'"

28    *Id.* (citing *Gherebi*, 352 F.3d at 1303).

1          *ii.      Analysis*

2          Claimant argues the Middle District of Florida is more convenient to the witnesses in this

3  action and to the public interest.  (ECF No. 12-1 at 8.)  Claimant asserts all factors point to

4  Florida as the most convenient forum to determine the points of contention, as the fraudsters are

5  not named defendants, are located abroad, and committed their fraud by email as opposed to

6  physically in California.  (*Id.* at 9.)  Claimant notes that it is a Florida entity conducting business

7  in and owning real estate in Florida, whereas Puentex is not even a party and in the process of

8  dissolution.  (*Id.*)  Claimant further asserts its inconvenience is manifest as it has no contacts with

9  California, the Government does not contend Claimant was involved in the underlying crime, and

10 Puentex is also located in Florida.  (*Id.*)

11         In response, the Government contends FBI Agent Austin Harper ("Harper") avers in his

12 declaration (ECF No. 20-2) that other people's inconvenience may exceed Claimant's and "nearly

13 all of the evidence" is located in the Eastern District of California, not Florida.  (ECF No. 22 at 2;

14 ECF No. 26 at 2–3.)  The Government asserts Claimant's venue transfer argument excludes 90

15 percent of how the victim was defrauded.  (*Id.*)  The Government finally notes Puentex is a

16 defunct company and therefore "its geography is zilch."  (ECF No. 22 at 3; ECF No. 26 at 3.)

17         As previously stated, courts looks to several factors to determine where the interests of

18 justice and convenience lie, including "(1) plaintiff's choice of forum, (2) convenience of the

19 parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of

20 each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local

21 interest in the controversy, and (8) the relative court congestion and time of trial in each

22 forum."  *Barnes & Noble, Inc.*, 823 F. Supp. 2d at 993.

23         Here, it appears the parties dispute the factors of convenience of the witnesses and ease of

24 access to the evidence.  The Court agrees with the Government that FBI Agent Harper indeed

25 avers in his declaration that all of the following are located in the Eastern District of California:

26 the elderly victim; the financial planner pivotal to revealing the fraud; the Schwab branch where

27 the two sets of wire instructions were completed and revised; the FBI agent and FBI Sacramento

28 law enforcement; the FBI agent's notes, copies of witness interview summaries, and the bank

1    records, corporate documents, and various files compiled during the investigation.  (ECF No. 22

2    at 2; ECF No. 26 at 2–3.)  The Court recognizes that Claimant is a Florida entity that does not

3    have contacts with California.  Nevertheless, based on the Government's list of witnesses and

4    evidence, the Court finds the ease of access to the evidence and convenience of the witnesses

5    factors weigh in favor of retaining the action in the Eastern District.  Other than possibly having

6    to travel to the Eastern District of California to litigate this action, the Court does not find

7    Claimant makes a strong showing of inconvenience to upset the Government's choice of forum.

8    *Oil Painting Entitled Femme en Blanc by Pablo Picasso*, 362 F. Supp. 2d at 1185.

9          Accordingly, the Court DENIES Claimant's motion to transfer venue to the Middle

10    District of Florida.

11          **IV.    CONCLUSION**

12          For the foregoing reasons, the Court DENIES the Government's Motion to Strike (ECF

13    No. 20) and DENIES Claimant's Motion to Dismiss (ECF No. 12).  Claimant shall file an answer

14    not later than twenty-one (21) days of the electronic filing date of this Order.

15          IT IS SO ORDERED.

16    Date: August 8, 2025

17

18

19                                        _____

20                                        TROY L. NUNLEY
                                          CHIEF UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

                                                18